Hazleton Area School District, Appellant *v.* Hazleton Area Education Association, Appellee.

Hazleton Area Education Association, Appellant *v.* Hazleton Area School District, Appellee.

Argued October 2, 1979, before President Judge BOWMAN and Judges CBUMLISH, JR., WILKINSON, JR., ROGERS, BLATT, DISALLE and MACPHAIL. Judges MENCER and CRAIG did not participate.

*James S. Palermo,* with him *David L. Glassberg,* for Hazleton Area School District.

*Peter J. O'Brien,* with him *O'Brien and Miller,* for Hazleton Area Education Association.

OPINION BY JUDGE ROGERS, November 9, 1979:

The Hazleton Area School District and the Hazleton Area Education Association, the union representing District teachers, has each appealed from an order of the Court of Common Pleas of Luzerne County vacating the award of an arbitrator and remanding the record to a new arbitrator for further hearings and disposition of a grievance filed in behalf of the teachers.

On October 9, 1975, representatives of the School Board and the Association negotiated an agreement settling a five-week teachers' strike. A written memorandum of the settlement contained the following provisions for a teacher's contract for the 1975-1976 school year:

All items in the present contract will remain as is, except for the following:

1—All teachers to receive $1,100, including the state-mandated $300 increment for those eligible. An additional step at the maximum and an $1,100 increase in starting salary.

. . . .

Teachers will lose three (3) of the scheduled four (4) in-service days. The calendar will be re-scheduled to June 18th, pending approval of the State Department of Education. If said calendar is not approved by the Department of Education, the Board shall in good faith attempt to schedule 180 pupil days up to June 30, 1976, if possible.

The Board and the membership of the Association ratified the settlement agreement and a comprehensive 1975-1976 draft of a contract was prepared consisting, we understand, of the old contract with the new pro-

visions inserted. This went into evidence at the arbitrator's hearing as Joint Exhibit 1. The Board in fact refused to execute Joint Exhibit 1 because of a dispute over the interpretation of its terms. The teachers returned to work on October 9, 1975 and the Board rescheduled the school calendar to begin on that day and end on June 18, 1976, thus providing a school year of 168 days of instruction and one in-service day, rather than the normal year of 180 instructional days and four in-service days.

On December 9, 1975, a Deputy Attorney General sent a letter to the School Board notifying it that the District was in violation of Section 1501 of the Public School Code of 1949,[1] requiring 180 instructional days per year, and warning that legal proceedings might be instituted by the Department of Justice to compel compliance. The District refused to extend the school year to 180 days and the Department of Justice took no action against the District.

The District also refused to pay the teachers their full year's salaries for the 1975-1976 school year and instead paid them only 169/184ths of their annual salaries to reflect the days they actually worked under the rescheduled calendar. The Association filed a grievance with the superintendent of schools, contending (1) that the District had not made a good faith effort to schedule 180 pupil days and asking that the Board be directed to provide 180 such days or as many as possible; and (2) that the teachers are entitled to the full salaries provided for in the collective bargaining agreements and that the Board be directed to pay such with interest. The District filed suit in equity seeking an injunction to restrain the arbitration and the Court of Common Pleas of Luzerne County refused to issue the injunction.

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §15-1501.

An arbitrator conducted hearings and thereafter dismissed the Association's complaint based on the District's decision not to schedule 180 instructional days but sustained the Association's complaint that the District's failure to pay the full salaries was contrary to the parties' agreement and ordered payment. The District appealed the award to the Court of Common Pleas which, concluding that the agreement properly construed did not require that the District pay the teachers for more than the number of days actually worked, vacated the arbitrator's award and remanded the record to a new arbitrator for further hearings on the issue of whether the District had made a good faith effort to schedule 180 days. The Association has appealed saying that the Court erred in vacating the arbitrator's award in its favor. The District has appealed saying that the court should not have remanded for proceedings on the issue of the District's bona fides in not scheduling 180 days.

The Association contends that the court below misapprehended the scope of review in its consideration of the arbitrator's decision. We agree. The dispute between the Association and the District was submitted to binding arbitration pursuant to Section 903 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.903. A court's scope of review of an arbitrator's award is set out in Sections 10 and 11 of the Act of April 25, 1927, P.L. 381, *as amended,* 5 P.S. §§170, 171. In *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/ NEA),* 473 Pa. 576, 375 A.2d 1267 (1977), the Supreme Court held that Section 11(d) requires a reviewing court to sustain an arbitration award under the PERA so long as it draws its essence from the collective bargaining agreement. Under this test, a court must uphold the arbitrator's interpretation of an agreement if

it can in any rational way be derived from the language and context of the agreement. *Carmichaels Area School District v. Carmichaels Area Education Association*, 37 Pa. Commonwealth Ct. 141, 389 A.2d 1203 (1978), *aff'd, per curiam,* Pa. , 407 A.2d 382 (1979).

The District's first argument seems to be derived from the opinion written for the Court of Common Pleas of Luzerne County because it certainly was not raised with the arbitrator or in its Petition for Review filed in the court below. The District says that the arbitrator erred when he based his opinion on the draft of contract prepared from the old contract with the additions agreed to on October 9, 1975 because the School Board refused to execute the draft of contract. Therefore, the District contends, the arbitrator should have confined his considerations to the memorandum of October 9, 1975; and that if he had done so he would have concluded that the School District had properly paid the teachers for only the number of days actually worked. The difficulty with this argument is that it faults the arbitrator for doing exactly what the parties, including the District, suggested was proper for him to do when they submitted the case. The draft of contract went into evidence before the arbitrator by stipulation of the parties as Joint Exhibit No. 1. Indeed, counsel for the District in opening argument to the arbitrator referred to sections of the draft contract, Joint Exhibit No. 1, and instructed the arbitrator on the District's interpretation of some of its provisions. Furthermore, the draft contract seems to be an amalgam of the old contract and the agreements reached on October 9, 1975. The School District's refusal to execute the draft of contract was not grounded on the School Board's contention that the draft of contract did not express what the parties agreed to on October 9, 1975; it was based rather on the parties'

disagreement as to what it meant with respect to the very issue submitted to the arbitrator for his binding decision.

The arbitrator looked first at Schedule A of the draft contract, which was a salary scale reflecting the increases agreed to in paragraph 1 of the settlement memorandum. He then looked at the draft's provision concerning the loss of in-service days and the rescheduling of the school calendar, which was taken verbatim from the settlement agreement of October 9, 1975. He particularly noted of this latter provision that the parties expressly provided for the loss of three in-service days but made no mention of other losses. The arbitrator concluded that under these provisions the teachers were entitled to full annual salaries, without regard to the length of the school calendar, except for the three in-service days specifically excluded. We believe that this conclusion is a rational view of the agreement of the parties, whether that agreement is evidenced by the settlement memorandum alone or by the draft of contract.

The District next says that the arbitrator's award violated Section 1006 of the PERA, 43 P.S. §1101.1006, and Section 1121 of the Public School Code of 1949, 24 P.S. §11-1121, both of which provide that public employees are not entitled to compensation for the period during which they are on strike. This argument was answered in *Carmichaels Area School District v. Carmichaels Area Education Association, supra,* where we held that an arbitrator's award of full annual salaries did not violate the Code provision cited because the contract on which the award was made became effective at the end of the strike and contemplated the future performance of duties. The same circumstance exists here.

Finally, the District says that the award should be vacated because the arbitrator was guilty of prejudi-

cial misconduct. This argument is based on the arbitrator's alleged failure to read the District's brief before rendering a decision in the case. The brief, according to the District, arrived at both the arbitrator's home and his office on the same day that the arbitrator issued an oral decision in favor of the Association. The District asserts therefore that the arbitrator did not consider its thirty-five page brief before rendering his oral decision. On the record before us, we cannot say that the arbitrator failed to read the District's brief before announcing his oral decision. Moreover, a final written decision was not issued until thirty days after the oral determination; the arbitrator clearly had full opportunity to read the Association's brief in that period. It is not our province to probe the mental processes of an arbitrator and to determine what role a piece of evidence or a brief might have played in an arbitrator's decision. *Wark & Co. v. Twelfth & Sansom Corp.*, 378 Pa. 578, 107 A.2d 856 (1954).

ORDER

AND Now, this 9th day of November, 1979, the order of the Court of Common Pleas of Luzerne County dated November 6, 1978 is hereby reversed and the award of the arbitrator dated April 22, 1976 is reinstated.