621 A.2d 1224

CITY OF PITTSBURGH, Appellant,

v.

COMMONWEALTH of Pennsylvania, PENNSYLVANIA LABOR RELATIONS BOARD, and American Federation of State, County and Municipal Employees, District Council 84, AFL–CIO.

Commonwealth Court of Pennsylvania.

Argued Dec. 14, 1992.

Decided March 1, 1993.

---

Marianne S. Malloy, Asst. City Sol., for appellant.

Peter Lassi, for appellee Pa. Labor Relations Bd.

Alaine S. Williams, for appellee AFSCME.

Before PALLADINO and FRIEDMAN, JJ., and NARICK, Senior Judge.

PALLADINO, Judge.

City of Pittsburgh (City) appeals an order of the Court of Common Pleas of Allegheny County (trial court) which affirmed the decision of the Pennsylvania Labor Relations Board (PLRB), finding that the City had committed an unfair labor practice. We affirm.

In 1984, the legislature enacted the Municipal Pension Plan Funding Standard and Recovery Act (Act 205).[1] Act 205 establishes a recovery program for municipal pension systems determined to be financially distressed, defines various levels of distress (I, II or III), and establishes mandatory requirements with which a municipality must comply in order to qualify for the assistance provided by a particular plan. The City's pension plan was determined to be "severely distressed" and therefore eligible to participate in Level III of the recovery program. In 1985, the City enacted a resolution electing to utilize Recovery Program Level III of Act 205. Among the mandatory requirements for Level III participants is the establishment of a revised pension benefit plan for newly hired municipal employees.

On September 28, 1987, the City's council enacted an ordinance establishing a revised pension plan for employees hired on or after January 1, 1988. The ordinance was approved by the City's mayor on September 30, 1987. The City did not bargain over the revised pension plan with the American Federation of State, County and Municipal Employees, District Council 84, AFL–CIO (AFSCME), the PLRB-certified collective bargaining representative unit of certain City employees. It did, however, meet and discuss the issue with AFSCME on several occasions.[2]

On March 31, 1988, AFSCME filed a charge of unfair labor practices against the City. Specifically, AFSCME alleged that by failing to bargain with AFSCME over implementation

1. Act of December 18, 1984, P.L. 1005, *as amended*, §§ 101–803, 53 P.S. §§ 895.101–895.803.

2. In lieu of a hearing, the parties entered into stipulations of fact. Those stipulations fail to indicate when the parties "met and discussed" the pension plan revisions.

of reduced pension benefits for employes hired on or after January 1, 1988, the City had violated Sections 1201(a)(1) and (5) of the Public Employe Relations Act (PERA).[3] The City filed an Answer and New Matter averring that it was under no obligation to bargain with AFSCME, that the charge was untimely filed and that AFSCME had waived whatever right to bargain it might have had. Upon agreement that no factual issues were in dispute, the parties filed joint exhibits, entered into stipulations of fact, waived their right to a hearing and submitted the matter on briefs to a hearing examiner for the PLRB.

The hearing examiner issued a proposed decision and order, concluding that the City had not committed an unfair labor practice in violation of PERA. AFSCME filed timely exceptions to the proposed decision and order. Thereafter, the PLRB issued a final order, reversing the decision of the hearing examiner and concluding that the City had committed an unfair labor practice. The City appealed to the trial court which affirmed the decision of the PLRB.

On appeal to this court, two issues are presented for our review: (1) whether the PLRB reasonably concluded that the City committed an unfair labor practice by failing to bargain with AFSCME concerning the revised pension benefit plan for employees hired on or after January 1, 1988; and (2) whether the PLRB reasonably concluded that the parties' collective bargaining agreement did not evidence a waiver by AFSCME of its right to bargain over the revised pension plan.[4]

With regard to the first issue, the City argues that the implementation of the revised pension plan is a matter of inherent managerial policy concerning its overall budget process and therefore a matter of permissive bargaining under section 702 of PERA. We disagree.

3. Act of July 23, 1970, P.L. No. 195 *as amended*, 43 P.S. §§ 1101.101–1101.2301.

4. Our scope of review is limited to a determination of whether the findings of the PLRB are supported by substantial evidence and whether conclusions drawn from those findings are reasonable and not capricious, arbitrary or illegal. *Abington Transportation Association v. Pennsylvania Labor Relations Board,* 131 Pa.Commonwealth Ct. 267, 570 A.2d 108 (1990).

Section 702 of PERA is an exception to the general rule established by section 701 of PERA. Section 701 requires public employers and the representative of public employes to bargain in good faith over wages, hours and other terms and conditions of employment. 43 P.S. § 1101.701. Section 702 of PERA provides as follows:

> Public employers shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employe representatives.

43 P.S. § 1101.702.

Whether a particular matter falls within the scope of section 702 rather than 701 is determined by applying the balancing test established by the supreme court in *Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 337 A.2d 262 (1975). In *State College* the court specifically held:

> [W]here an item of dispute is a matter of fundamental concern to the employes' interest in wages, hours and other terms of employment, it is not removed as a matter subject to good faith bargaining under section 701 simply because it may touch upon basic policy. It is the duty of the [PLRB] in the first instance and the courts thereafter to determine whether the impact of the issue on the interest of the employe in wages, hours and terms and conditions of employment outweighs its probable effect on the basic policy of the system as a whole.

461 Pa. at 507, 337 A.2d at 268.

In applying the above-stated test, the PLRB has determined that it is an employer's overall budget and not individu-

al components of the budget which is a matter of inherent managerial policy. *Scranton School District,* 19 PPER ¶ 19173 (Final Order, 1988). Thus, although a reduction in the pensions of newly hired employees may have an impact on the City's budget, it is not a matter of inherent managerial policy, because a pension plan is only one component of the City's vast budget.

Additionally, we note that this court has previously held that retirement benefits are a mandatory subject of collective bargaining and therefore covered by section 701 of PERA. *Appeal of Rose Tree Media School District,* 48 Pa. Commonwealth Ct. 368, 409 A.2d 1374 (1980); *Pennsylvania State Education Association v. Baldwin–Whitehall School District,* 30 Pa.Commonwealth Ct. 149, 372 A.2d 960 (1977). Thus, we conclude that the implementation of a revised pension plan, adopted because of the City's election to participate in the Level III recovery program, is not a matter of inherent managerial policy contemplated by Section 702 and, therefore, is a mandatory subject of collective bargaining covered by Section 701.

The City further argues that in drafting Act 205, the legislature adopted language which permits municipalities to establish the required revised pension plans without subjecting the establishment of the plan to collective bargaining. Section 607 of Act 205 provides in pertinent part:

A revised benefit plan for newly hired municipal employees shall be developed with consultation with representatives of the collective bargaining unit applicable to the affected type of municipal employee, if any, and shall be within the scope of collective bargaining pursuant to the applicable law subsequent to the establishment of the revised benefit plan.

53 P.S. § 895.607.

The mere fact that a particular subject matter is covered by legislation does not remove it from the collective bargaining requirements of 701. *State College.* The removal from collective bargaining results when to do otherwise would be in direct violation of a statutory mandate. *Id.* Items

bargainable under section 701 are only excluded under section 703 of PERA[5] where other applicable statutory provisions "explicitly and definitively prohibit the public employer from making an agreement as to that specific term or condition of employment." *Id.* 461 Pa. at 510, 337 A.2d at 270.

Act 205 fails to provide a definition of the phrase "consultation with". The legislature could have intended the phrase to be synonymous with "meet and discuss", the terms used in section 702 of PERA. It could have intended it to mean "bargain in good faith", the terms used in section 701 of PERA. Regardless of the interpretation chosen by this court, it is clear that the statutory language does not explicitly and definitively prohibit the employer from making an agreement with the employe representative as to the revised pension plan. Thus, we conclude that the statutory language of Act 205 does not satisfy the requirements of Section 703 and therefore, does not remove the revised pension plan from the collective bargaining requirement of section 701 of PERA.

■ Accordingly, we hold that the PLRB acted reasonably in concluding that the City committed an unfair labor practice by failing to bargain with AFSCME concerning the revised pension benefit plan for employees hired on or after January 1, 1988.

The second issue raised by the City concerns the PLRB's conclusion that the parties' collective bargaining agreement did not evidence a waiver by AFSCME of its right to bargain over the revised pension plan. The City argues because the establishment of revised pension benefits for newly hired employees is not addressed in the collective bargaining agreement, AFSCME waived its right to bargain over the subject. In support of its argument the City cites a portion of the

5. Section 703 provides: "The parties to the collective bargaining process shall not effect or implement a provision in a collective bargaining agreement if the implementation of the provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters." 43 P.S. § 1101.-703.

"zipper" clause of the collective bargaining agreement. That clause states in pertinent part:

> The parties are aware of the Pennsylvania Labor Relations Board's revised policy concerning "zipper clauses" (citation omitted) and state unequivocally that the language of this Article is intended to evidence an unmistakable intent to relinquish the right to bargain over any mandatory subject of bargaining, whether or not that subject is specifically dealt with in this Agreement, during the term of this Agreement, notwithstanding the holdings of the PLRB and the Commonwealth Court in *Venango County*."

Joint Exhibit No. 1, Collective Bargaining Agreement.

The City's argument focuses on the fact that the parties agreed to follow pre-*Venango County*[6] law. In *Venango County*, the PLRB reversed its position concerning waiver, concluding that express and unmistakable action must be taken by the waiving party in order for waiver to be found.

█ The City acknowledges that prior to *Venango County*, the PLRB had given such broadly worded "zipper" clauses an effect of rendering lawful unilateral changes in working conditions made by an employer with respect to matters *excluded* from the collective agreement executed by the parties. Brief for Appellant at 20. However, what the City fails to recognize is that employee pension benefits were in fact covered by the collective bargaining agreement between the City and AFSCME in this case. Thus, the revision to the pension plan by the City without bargaining with AFSCME was a unilateral change made by an employer with respect to a matter already *included* in the agreement. Such action did not operate as a valid waiver pre-*Venango County* and certainly does not constitute express and unmistakable action by AFSCME to waive its right to bargain over the revised plan as required by applicable law today.

6. *Commonwealth (Venango County Board of Assistance)*, 11 PPER ¶ 11223 (Final Order, 1980), affirmed by *Commonwealth of Pennsylvania v. Commonwealth of Pennsylvania, Labor Relations Board*, 74 Pa.Commonwealth Ct. 1, 459 A.2d 452 (1983).

Therefore, we hold that the PLRB acted reasonably in concluding that AFSCME, in executing the collective bargaining agreement, did not waive its right to bargain over the revised pension plan.

Accordingly, the order of the trial court, affirming the decision of the PLRB is affirmed.

## ORDER

AND NOW, March 1, 1993, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.

PELLEGRINI, J., did not participate in the decision in this case.